THE CITY OF YONKERS, Appellant and Respondent, *v.* THE FEDERAL SUGAR REFINING COMPANY, Respondent and Appellant.

**Damages — injunction — liability of municipal corporation for damages caused by injunction obtained by municipality and thereafter vacated by the courts — contents of the order granting the injunction.**

There was no liability at common law for damages resulting from an injunction erroneously granted save in cases of malicious prosecution. The Code requirements for security upon application for provisional remedies must be read in the light of the rule at common law, and invariably the undertaking required is limited to a sum specified by the court or judge. Special rules apply, however, to provisional remedies granted at the instance of municipal corporations. In such cases no security was required, but an amendment in 1894 to section 1990 of the Code of Civil Procedure modified the exemption so as to require that where a municipal corporation is excused from giving security on obtaining an injunction, such corporation shall be liable for all damages that may be sustained by the opposite party by reason of such order or injunction in the same case and to the same extent as sureties to an undertaking would have been if such an undertaking had been given. Sureties would be liable, however, to an extent not greater than the sum specified by the court or judge. The court or judge must, therefore, prescribe in the order of injunction the maximum extent to which a municipal corporation shall be liable. If the amount stated is too low, the defendant may move to increase it. Until some amount is stated, there is no liability on the part of the municipality.

*City of Yonkers* v. *Federal Sugar Refining Co.*, 177 App. Div. 728, reversed.)

(Argued June 6, 1917; decided July 11, 1917.)

CROSS-APPEALS from an order of the Appellate Division of the Supreme Court in the second judicial department, entered April 13, 1917, which modified and affirmed as modified an order of Special Term confirming the report of a referee appointed to assess the damages sustained by defendant by reason of an injunction *pendente lite.*

The facts, so far as material, are stated in the opinion.

*Thomas F. Curran* for plaintiff, appellant and respondent.    The defendant is not entitled to damages claimed to have been sustained by it for the period that the temporary injunction was in force.  (Code Civ. Pro. § 620; *Edmison* v. *Sioux Falls Water Co.*, 73 N. W. Rep. 910; *Russell* v. *Farley*, 105 U. S. 433; *Roberts* v. *White*, 73 N. Y. 375; High on Injunctions, § 1675; *Crounse* v. *S. C. & N. Y. R. R. Co.*, 32 Hun, 497; *Guthrie* v. *Biethan*, 139 Pac. Rep. 718; *Mahan* v. *Brown*, 13 Wend. 261; *W. V. Trans. Co.* v. *S. O. Co.*, 50 W. Va. 611; *Andrews* v. *G. W. Co.*, 50 N. Y. 282; *Chicago* v. *A. N. Ry. Co.*, 132 N. W. Rep. 840; *Tel. Co.* v. *A. Tel. Co.*, 74 S. W. Rep. 218.)

*Charles Philip Easton* for defendant, respondent and appellant.    The defendant is entitled to damages, whether or not said defendant appeared on the return of the order to show cause why a temporary injunction should not be issued.  (Code Civ. Pro. § 620.)    The defendant is entitled, as part of its damages, to the increased cost of manufacturing and refining sugar by reason of the injunction, and also to its loss of profits by reason of the injunction shown with reasonable certainty to have been sustained.  (*M. & T. Bank* v. *C. W. F. Dare Co.*, 67 Hun, 44; 138 N. Y. 635; *Wakeman* v. *W. & W. Mfg. Co.*, 101 N. Y. 205; *Nash* v. *Thousand Islands Steamboat Co.*, 123 App. Div. 148; *Myer Bros. Drug Co.* v. *McKenny*, 137 App. Div. 541; *Central Trust Co.* v. *West India Improvement Co.*, 144 App. Div. 560; *Dart* v. *Lainbeer*, 107 N. Y. 664; *Nemrow* v. *Assembly Catering & Supply Co.*, 121 App. Div. 481; *Hovey* v. *Rubber Tip Pencil Co.*, 50 N. Y. 335; *Roberts* v. *White*, 73 N. Y. 375; *Dickinson* v. *Hart*, 142 N. Y. 183; *Griffen* v. *Colver*, 16 N. Y. 489; *Hall Sons Co.* v. *Sundstrom & Stratton Co.*, 138 App. Div. 548.)

CARDOZO, J.    In August, 1907, the city of Yonkers began an action against the Federal Sugar Refining

Company to enjoin a public nuisance. It sued in behalf of the people of the city, whose comfort and property were affected by the use of soft coal in the furnaces of the defendant's factory. On August 27, 1907, there was served an order to show cause why an injunction should not be granted during the pendency of the action. On the return day, August 29, the defendant made default, and the injunction issued. The injunction order was served on September 4, but the plaintiff consented that its effect should be suspended until September 7. On September 13 the defendant obtained an order to show cause why the injunction should not be vacated. The motion was granted on September 17, the defendant stipulating for a reference of the issues and a speedy trial. The referee gave judgment in favor of the plaintiff. The Appellate Division reversed the judgment and granted a new trial on the ground that the city was without authority to redress the wrongs of its inhabitants (136 App. Div. 701). On appeal to this court the order was affirmed, and judgment absolute was entered in favor of the defendant (207 N. Y. 724).

A petition to assess the damages resulting from the temporary injunction followed. The injunction had been in force from September 7 to September 17. The referee found that during that interval the defendant's output was diminished and its profits decreased by the use of hard coal, and he fixed the damage at $34,578.21. He also allowed counsel fees of $3,200. The total award with disbursements was $38,753.21. The Appellate Division reduced the item of damage to the business to $20,000. The other items it approved. Both parties have appealed to this court, the plaintiff from the award as reduced, and the defendant from the reduction.

There was no liability at common law for damages resulting from an injunction erroneously granted unless the case was one of malicious prosecution (*Lawton* v. *Green*, 64 N. Y. 326, 330; *Palmer* v. *Foley*, 71 N. Y. 106,

108; *Mark* v. *Hyatt*, 135 N. Y. 306, 310; *Russell* v. *Farley*, 105 U. S. 433; *Meyers* v. *Block*, 120 U. S. 206; *Krzyszke* v. *Kamin*, 163 Mich. 290). Sometimes the chancellor made his order conditional upon the plaintiff's undertaking to assume the damages (*Russell* v. *Farley, supra; Smith* v. *Day,* 21 Ch. Div. 421; Chancery Rule [N. Y.] 31). But without such a condition the defendant had no remedy against the honest and cautious suitor. Public policy was thought to demand that the free pursuit of remedies in the courts should not be obstructed by the menace of liability for innocent mistake.

The Code requirements for security upon applications for provisional remedies must be read in the light of the rule at common law. Invariably the undertaking is limited to a sum specified by the court or judge. That is true in cases of arrest (Code Civ. Pro. § 559); attachment (§ 640); and injunction (§§ 611, 613, 616, 620). The general rule for injunctions is prescribed by section 620: "Where special provision is not otherwise made by law for the security to be given upon an injunction order, the party applying therefor must give an undertaking, executed by him, or by one or more sureties, as the court or judge directs, to the effect that the plaintiff will pay to the party enjoined, such damages, not exceeding a sum, specified in the undertaking, as he may sustain by reason of the injunction, if the court finally decides that the plaintiff was not entitled thereto " (Code Civ. Pro. § 620). The rule is not changed where the plaintiff signs without sureties. The undertaking is still the source and measure of liability (*Lawton* v. *Green; Palmer* v. *Foley, supra*). It is true that the court may increase the amount of an undertaking which is found to be inadequate (Code Civ. Pro. § 567, arrest; § 629, injunction; § 682, attachment). A plaintiff then has the opportunity, if he thinks the security excessive, to abandon his injunction. In any case, he counts the cost, and assumes a liability whose maximum is a determinate amount.

14

Special rules apply, however, to provisional remedies granted at the instance of municipal corporations. In such cases no security is required. Until an amendment in 1894, the statute was as follows (Code Civ. Pro. § 1990): "Each provision of this act, requiring a party to give security, for the purpose of procuring an order of arrest, an injunction order, or a warrant of attachment, or as a condition of obtaining any other relief, or taking any proceeding; or allowing the court, or a judge, to require such security to be given, is to be construed as excluding an action brought by the people of the state, or by a domestic municipal corporation; or by a public officer, in behalf of the people, or of such a corporation; except where the security, to be given in such an action, is specially regulated by the provision in question." Under those provisions, a municipal corporation was exempt from liability altogether (*Doyle* v. *City of Sandpoint,* 18 Idaho, 654; 32 L. R. A. [N. S.] 34). An amendment in 1894 modified the exemption. By chapter 90 of the laws of that year, there was added to section 1990 the following provision: "But in any action in which a domestic municipal corporation, or a public officer in behalf of such corporation, shall be, by the foregoing provisions of this section, excused from giving security on procuring an order of arrest, an order of injunction or a warrant of attachment, such corporation shall be liable for all damages that may be so sustained by the opposite party by reason of such order of arrest, attachment or injunction in the same case and to the same extent as sureties to an undertaking would have been, if such an undertaking had been given." The effect of that amendment is now to be determined.

The statute does not say that a municipal corporation shall be liable without qualification for all damages sustained by reason of the injunction. It says that the corporation shall be liable for all such damages " in the same case and to the same extent as sureties to an undertak-

ing would have been if such an undertaking had been given." The defendant construes the statute as if those words were omitted. That is not permissible if an office and meaning may be assigned to them. To ascertain the extent of the plaintiff's liability we are to ascertain the extent to which sureties would be liable. The answer is not doubtful. Sureties would be liable to an extent not greater than the sum specified by the court or judge. They would not be liable generally. The plaintiff's liability, therefore, must be kept within like bounds. There is no difficulty in attaining that result. If the liability of a municipal corporation is to be a liability of the same extent as that of sureties on an undertaking, the judge who grants the injunction must fix the extent in the one case as in the other. Either that is so, or the statute is ineffective altogether. All that is necessary to make it workable is to embody in the injunction a provision substantially as follows: "The plaintiff, as a condition of this order, shall be liable for any damages sustained by the defendant, not exceeding a specified sum." If the amount stated is too low, the defendant may move to increase it. Until some amount is stated, there is no liability; and none was stated here.

Any other construction of the statute leads to curious results. A private litigant is not required (except in the discretion of the judge) to give sureties at all. He may give his own undertaking without sureties (Code Civ. Pro. § 620). Even so, his liability is limited. If some resident of Yonkers had brought this suit, there would have been a prescribed maximum of risk. The plain purpose of the statute was, not to impose upon municipal corporations an added burden, but to give them a special privilege. The privilege is an illusory one if this order is to be affirmed. If the defendant's position is upheld, a municipal corporation, alone among litigants, may find itself involved in a crushing and indeterminate liability because of the error of a court in holding that it was

entitled to relief. This is the more extraordinary when we recall that until 1894 a municipal corporation was not liable at all. We can hardly doubt that if a bond with a penalty of $100,000 or even $20,000 had been exacted, or an equivalent limit of liability named, the plaintiff would have preferred to wait for an injunction until the trial. The defendant suffers default; and then having leisurely awaited the arrival of absent counsel, vacates the injunction and sues for estimated profits. These things happened in this case. They may happen in other cases. They point to the evils of unlimited liability.

The argument is made that in thus construing the statute, we clothe the court or judge with a power which the lawmakers have withheld. But the criticism is unwarranted. The power has been granted by implication, for it is one necessary to make the law effective. In truth, it is not a new power at all. Even without the aid of statute, courts of equity worked out the practice of conditioning the right to relief upon just and equitable terms in respect of liability for damages. That in its essence is the power which we now ascribe to the judge who grants a temporary injunction. In defining the extent of liability, he is drawing upon an ancient jurisdiction in order to give effect and meaning to the statutory scheme. He conditions the injunction upon the plaintiff's submission to liability in damages, and he fixes the maximum liability as if sureties had signed a bond.

This construction gives significance to every word of the statute; it makes the entire scheme harmonious; it saves municipal corporations from unexpected and indeterminate liabilities; it avoids the temptation otherwise offered to defendants to put forward extravagant claims; and it maintains the principle of public policy that the right to resort to the courts, when exercised in good faith, shall be kept free from the menace of unknown and unknowable penalties which intimidate the suitor, and clog his liberty of action. That principle is, of

course, not one of universal validity; but at least it expresses the prevailing tendency of our law.

The order should be reversed, and the petition dismissed, with costs in all courts.

CHASE, POUND, McLAUGHLIN, CRANE and ANDREWS, JJ., concur; COLLIN, J., dissents.

Order reversed, etc.