OPINION OF THE COURT
Edward J. Greenfield, J.
This case grows out of the aftermath of a lawsuit in which Brooke Shields, the well-known model and actress, had attempted to obtain an injunction to prevent Garry Gross, a professional photographer, from printing or selling, for the purposes of trade or advertising, certain nude photographs taken of her when she was 10 years old, for which her mother, as guardian, had signed a release. Having initially obtained a preliminary injunction, but having then ultimately lost her lawsuit, Gross turned around and sued Shields for $750,000 for the damages allegedly sustained by reason of "the wrongful forms of injunctive relief’. Defendant Shields has moved to dismiss the current complaint as a matter of law.
*642 PROCEDURAL HISTORY
Shields originally brought the action for injunction on May 19, 1981, alleging that use of the photographs by Gross violated her rights of privacy under Civil Rights Law §§ 50 and 51. The court, per Acting Justice Beverly S. Cohen, signed an order to show cause containing a temporary restraining order barring Gross from sale or use of the pictures pending hearing of the motion, and ultimately, by agreement, until determination of the motion. Application to vacate the temporary restraining order was twice denied and on September 23, 1981 a preliminary injunction, on grounds of "irreparable injury” was granted by Mr. Justice Helman.
On November 10, 1981, after a plenary nonjury trial, this court (Greenfield, J.) dismissed Shields’ complaint and application for a permanent injunction, but restrained Gross from using or permitting the use of the photographs in pornographic magazines or publications whose appeal was prurient in nature, and charged him with the responsibility for preventing any unlicensed use of the photographs. The court granted Shields a continuing 14-day stay pending appeal to the Appellate Division.
Shields appealed, and the Appellate Division modified the judgment entered at Trial Term by permanently enjoining Gross from using the photographs for purposes of advertising or trade. (Shields v Gross, 88 AD2d 846.) The Court of Appeals however modified the Appellate Division decision by reinstating Trial Term’s order (Shields v Gross, 58 NY2d 388), holding that Shields’ mother, as guardian, had signed an effective release under the Civil Rights Law, binding on her minor daughter, and that she had no common-law rights, but was restricted to the explicit terms of the privacy statute.
In initially obtaining the preliminary injunction, Shields posted a $5,000 undertaking. The Appellate Division extended the preliminary injunction upon the posting of an additional $45,000 undertaking. While the appeal to the Court of Appeals was pending, Shields moved to discharge the $5,000 and $45,000 undertakings. The motion was granted on September 29, 1982 (Altman, J.). The Appellate Division affirmed the discharge of the undertakings on March 31, 1983 and the Court of Appeals denied leave to appeal on June 2, 1983.
Subsequent to the Court of Appeals decision (on Mar. 29, 1983) determining that Shields was not entitled to a permanent injunction as to the pictures for purposes of advertising *643 or trade, Shields obtained a third preliminary injunction on April 5, 1983 (Greenfield, J.) pending reargument to the Court of Appeals, in which she posted a $30,000 undertaking to compensate Gross for the possible diminished value of the sale of the pictures to newspapers on the ground that the value of the photographs would decrease in accordance with the time that lapsed between the newsworthy event (i.e., the Court of Appeals decision) and the time of publication. The Court of Appeals denied leave to reargue on April 29, 1983 (Shields v Gross, 59 NY2d 762).
In December 1981 having won on the trial but still being prevented from selling or exploiting the now-celebrated photographs, Gross commenced an action against Shields for malicious prosecution in having improperly obtained a temporary restraining order and a preliminary injunction from the Supreme Court. That action was dismissed on June 30, 1982 (Greenfield, J.), on the ground that Gross could not, as a matter of law, establish malice by Shields in obtaining injunctive relief.
In this second action, Gross seeks legal fees, lost income, costs and disbursements incurred by him as a result of the injunctive relief obtained by Shields, seeking damages in the sum of $750,000.
SHIELDS’ MOTION TO DISMISS
Shields moves to dismiss the complaint pursuant to CPLR 3211 (a) (1), (7). Shields contends that this action is barred by res judicata and that Gross’ damages are limited to the undertakings posted to obtain the injunctive relief.
At common law, there was no liability for damages sustained by a defendant if an injunction was erroneously granted unless the injunction was obtained maliciously (City of Yonkers v Federal Sugar Refining Co., 221 NY 206, 208). The reason for this prohibition was one of public policy. "[T]he free pursuit of remedies in the courts should not be obstructed by the menace of liability for innocent mistake.” (City of Yonkers v Federal Sugar Refining Co., supra, at p 209.)
Since the enactment of civil codes in this State, cases determining the liability of a plaintiff for damages sustained by a defendant as a result of a wrongful injunction have consistently held that a defendant may recover only on the undertaking or on the basis of an action for malicious prosecution. (Mark v Hyatt, 135 NY 306; Palmer v Foley, 71 NY 106; *644 Lawton v Green, 64 NY 326; Brooklyn Consol. Lbr. Corp. v City Plastering Co., 236 App Div 799.)
There are indeed some cases which have granted damages in excess of the undertaking, even in the absence of a suit for malicious prosecution, but each is conceptually distinguishable and not applicable here. Thus, in City of New York v Brown (179 NY 303) the damages sought did not arise from the wrongful issuance of an injunction, but from the improper use of a pier (the subject of the injunction) while in plaintiffs possession. Similarly, in Bedell Co. v Harris (228 App Div 529), a landlord was entitled to recover damages for possession of the premises by a tenant, notwithstanding a preliminary injunction, on the grounds that it would only be fair to compel the tenant to pay for use and occupancy. Thus it is clear that this line of cases involves the concept of the courts seeking to prevent unjust enrichment, i.e., where the granting of the injunction benefited the plaintiff materially or financially at the expense of defendant by using or prohibiting the use of the subject of the action while the injunction was extant. Gross has not alleged a cause of action for unjust enrichment, nor has there been any suggestion that Shields used the subject of the injunction (i.e., the photographs taken of her) for her own material or financial benefit while the injunction was extant. Nor has Gross pleaded, in this second amended complaint, any cause of action for malicious prosecution.
GROSS’ OPPOSITION
Gross contends that Shields’ liability for damages is not limited to the undertaking because CPLR 6315 does not explicitly provide that the undertaking is the limit of liability.
Under Field Code § 195, Code Civil Procedure § 611 et seq., Civil Practice Act § 884 et seq. and presently under CPLR 6312 (b), New York statutes have conditioned granting an injunction upon the posting of an undertaking or other security to compensate the defendant in the event that plaintiff was not entitled to the injunction.
Under the Code Civil Procedure, the "undertaking [was] the source and measure of liability”. (City of Yonkers v Federal Sugar Refining Co., supra, at p 209.) A reason given for limiting damages to the undertaking was that "a plaintiff * * * has the opportunity, if he thinks the security excessive, to abandon his injunction. In any case, he counts the cost, and assumes a liability whose maximum is a determinate *645 amount”. (City of Yonkers v Federal Sugar Refining Co., supra, at p 209.) Similarly, the Civil Practice Act provided that the applicant for the injunction was required to post an undertaking to pay the party enjoined damages "not exceeding a sum, specified in the undertaking” (Civ Prac Act § 893).
It is true that the CPLR, unlike its predecessors, does not expressly state that the undertaking is the plaintiffs limit of liability. However, the legislative history contained in McKinney’s Consolidated Laws of NY (Book 7B, CPLR 6315, p 392) indicates that CPLR 6315 is a simplification of Civil Practice Act §§894, 895 and 896 and that the "only change of substance made * * * is to require notice to all 'interested parties’ ”. Civil Practice Act §§ 894, 895 and 896 provided for the ascertainment of damages by defendant, ascertainment of damages sustained by third parties and an action on the undertaking, respectively.
CPLR 6315 does not in any event create a new substantive right to damages, but is merely a procedural device, whereby a party wrongfully enjoined may have his damages determined in an expedited manner prior to commencing a separate plenary action to recover his damages, i.e., an action on the undertaking.
The only section in CPLR article 63 containing a substantive provision for an award of damages is contained in CPLR 6312 (b) (cf. CPLR 6313 [c]). The purpose of an undertaking pursuant to section 6312 (b) is to "reimburse the defendant for damages sustained if it is later finally determined that the preliminary injunction was erroneously granted.” (Margolies v Encounter, Inc., 42 NY2d 475, 477.)
From the foregoing it is evident that on the present showing, Gross is limited to an action on the undertaking, his previous action for malicious prosecution of the injunction suit having been dismissed by this court.
RECOVERY ON THE UNDERTAKING
A further problem is presented, however, since the initial $5,000 and $45,000 undertakings have been discharged. Procedure under the Civil Practice Act was different than at present, since a stay could not be canceled and the undertaking would remain in effect "until either damages have been assessed thereunder or * * * the plaintiff is ultimately successful and the matter finally adjudicated”. (Carpenter & Hughes v De Joseph, 29 Misc 519, 520.) The Court of Appeals *646 in Margolies v Encounter, Inc. (supra) rejected the view that entitlement to damages pursuant to CPLR 6312 (b) was dependent on the outcome of the main action, and instead placed the focus on the "propriety of the issuance of the preliminary injunction when it was granted at the commencement of the action”. (Supra, at p 479.) What is troublesome in the application of Margolies (supra) to this action is that the preliminary relief sought and the final determination on the merits are the same.
The first two undertakings were discharged in Special Term while the appeal to the Court of Appeals was pending, and the Appellate Division affirmed the discharge three days after the Court of Appeals determined the merits of the action but before leave to reargue was denied.
However, the Court of Appeals denial of leave to appeal on the issue of the discharge of the first two undertakings after the issues on the main action had been finally determined must be considered a final determination on the merits, barring Gross from prosecuting an action on these discharged undertakings on grounds of res judicata.
The $30,000 undertaking later fixed by this court stands on different grounds. This undertaking was granted to protect Gross from damages occasioned by the diminished sales value of the photographs to publications while Shields sought leave to reargue to the Court of Appeals. The denial of leave to reargue by the Court of Appeals on April 29, 1983 is a final determination, and establishes for the purposes of CPLR 6312 (b), that Shields was not entitled to the April 5, 1983 injunction.
Shields is therefore answerable to Gross for damages suffered by him between April 5, 1983 and April 29, 1983, during which period Gross was enjoined from selling the pictures to newsworthy publications. Gross is also entitled to attorney’s fees to the extent that such services were rendered in an attempt to vacate the April 5, 1983 preliminary injunction and such counsel fees as will be necessarily rendered in an attempt to ascertain damages pursuant to CPLR 6315, and also for counsel fees occasioned by Shields’ motion for leave to appeal to the Court of Appeals its decision of March 29, 1983 since the injunctive relief and the merits of the action are inseparable (see, Cross Props. v Brook Realty Co., 76 AD2d 445).
Shields’ alternative ground for dismissal, that this action is *647 totally barred by res judicata because the first action by Gross was dismissed is not well taken. The prior action was dismissed on the grounds that it failed to state a cause of action for malicious prosecution, and that is not the issue posed by the present action.
Two related motions in which Gross seeks to ascertain damages pursuant to CPLR 6315 are also decided in accordance with this decision. The motion to ascertain damages as to the $5,000 and $45,000 undertakings is denied as moot. The motion to ascertain damages as to the $30,000 undertaking is granted. The issue of damages pursuant to CPLR 6315 is referred to a Referee to hear and report.
Counsel are directed to serve a conformed copy of this order upon the office of the Referees within five days of publication.
The motion to dismiss the complaint is denied.