COLE, Justice.
This case revolves around the aborted act of sale, and the consequent damages resulting therefrom, of a parcel of immovable property located at Marengo Street and St. Charles Avenue in New Orleans. The issues presented for resolution are: (1) whether “failure to mitigate damages” is *1281 an affirmative defense (required by La. Code Civ.Proc. art. 1005 to be pleaded specially in a defendant’s answer); (2) whether the existence and sufficiency of a power of attorney on behalf of one of the mortgagors was sufficiently proven before the trial court; and, (3) whether assessing legal interest on a judgment based upon a surety bond is appropriate if the sum thereby awarded is in excess of the penal limit of the bond. Because we conclude the power of attorney was proven, we affirm in part; because we conclude the evidence sought to be introduced did not constitute an allegation of failure to mitigate damages, and, hence, was improperly excluded by the trial court, we reverse in part; and because we believe it premature to decide whether assessing legal interest on a judgment based upon a surety bond is appropriate if the sum thereby awarded is in excess of the penal limit of the bond, we vacate in part and remand to the trial court for further proceedings.
I.
On July 29, 1983, plaintiffs P. Howard Johnsa and World Construction Company filed a petition for writ of injunction and for damages against defendants William E. Edwards, Jr. and George Fee seeking damages and seeking to enjoin defendants from purchasing the aforementioned parcel of property. The petition alleged defendant Edwards had fraudulently obtained a loan from Johnsa for the purchase of the property and further alleged defendant Fee, one of Johnsa’s employees in his construction business, had been assigned the task of inspecting the property for possible purchase by Johnsa. Johnsa alleged that although Fee told him the property was not available for purchase, Fee, Edwards and others were secretly trying to purchase the property using the sum Johnsa had lent Edwards as a deposit.
The petition was later amended to include as defendants Donald Bernard and Floyd Thacker, the other intended purchasers of the property. The property owners, members of the Mintz family, had agreed to transfer the property to the defendants on or before July 29, 1983. Financing was to be provided by Audubon Federal Savings and Loan, and Edwards, Bernard and his wife, and Thacker and his wife, were to endorse the mortgage to secure the loan.
The act of sale was scheduled to occur at 4:00 p.m. on Friday, July 29, 1983. The plaintiffs’ suit was filed at approximately 12:00 noon that day, and the trial court issued a temporary restraining order enjoining the sale and preventing defendants from purchasing the property. In conjunction with this order, plaintiffs furnished an injunction bond in the amount of $100,000 executed by an agent for Reliance Insurance Company (“Reliance”). The language of the bond provided that Johnsa, as principal, and Reliance, as surety, were bound and responsible for damages sustained by defendants in the event that the restraining order was determined to have been wrongfully issued.
Shortly before the scheduled act of sale, the parties to the transaction were notified of the restraining order, and the act of sale did not pass. On Monday, August 1, 1983, the next business day, the temporary restraining order was dissolved and vacated by the trial court on the motion of defendant Bernard, and the injunction petition was subsequently dismissed by plaintiffs.
In response to the plaintiffs’ petition for damages, defendants Edwards, Fee, and Bernard, individually and on behalf of Mar-edel Partnership, Ltd., formed by them for the development of a condominium project to be built at the St. Charles/Marengo site, filed an answer and general denial and subsequently filed a reconventional demand against Johnsa, World Construction Co., and Reliance for damages incurred as a result of the issuance of the restraining order which they allege prevented their acquisition of the property. Reliance filéd an answer to the reconventional demand and a third-party demand against Johnsa for indemnity for any and all amounts for which Reliance was cast in judgment.
The matter was tried before Commissioner Charles Rivet, who heard testimony on a number of days over a five-month period. The Commissioner issued a report and rec *1282 ommendation, to which Reliance filed exceptions. The trial court affirmed and entered judgment in accordance with the recommendation. The findings were: 1) the temporary restraining order was wrongfully issued; 2) defendants were entitled to damages in the amount of $102,500, which represents the difference between the agreed purchase price of the property of $287,500 and an appraised value of the property as of July 29, 1983, which was $390,000; and 3) based on the issuance of the injunction bond, Reliance was found liable for $100,000 plus interest and costs, and judgment was rendered against Johnsa personally for the remaining $2,500 in damages.
Reliance appealed to the Court of Appeal, Fourth Circuit, which affirmed the judgment of the trial court. Johnsa v. Edwards, 569 So.2d 547 (La.App. 4th Cir. 1990). Reliance sought rehearing en banc of the decision, and the court of appeal denied the application. Id. at 552. We granted writs, 576 So.2d 20 (La.1991), and now affirm in part, reverse in part, and remand to the trial court for further proceedings.
II.
Reliance first argues the court of appeal erred in concluding the trial court properly excluded Reliance’s proffered testimony on whether Edwards, Fee, Bernard, and Thacker (hereinafter referred to as “the purchasers”) had the ability to purchase the property on Monday, August 1, despite their inability to do so on Friday, July 29. Prior to the commencement of the trial, an objection was made by the purchasers regarding this anticipated testimony. They urged unfair surprise and articulated, as the basis of the objection, that the testimony constituted an allegation of failure to mitigate damages and such an allegation was an affirmative defense required to be specially pleaded in Reliance’s answer to the reconventional demand. The trial court agreed, citing La.Code Civ.Proc. art. 1005,[1] and Reliance attempted to amend its answer to add this affirmative defense. The court refused to allow the amended pleading at that point and refused to allow the testimony. It did allow Reliance to introduce the testimony into the record through a proffer; the purchasers introduced a rebuttal proffer on the issue.
The court of appeal agreed with the trial court that the testimony constituted an allegation by Reliance of the purchasers’ failure to mitigate damages, and concluded “[although ‘mitigation of damages’ is not an enumerated affirmative defense [under art. 1005], clearly, it falls under the provision in the article, ‘any other matter constituting an affirmative defense.’ ” Johnsa, 569 So.2d at 551. The court reasoned mitigation of damages, as any other affirmative defense, operates to defeat a plaintiff’s petition not by a showing that the issues raised by plaintiff’s petition will result in judgment for defendants but instead that matters wholly apart from the consideration of issues raised by plaintiff’s petition will result in judgment for defendants. Id. (citing Rider v. Fontenot, 463 So.2d 951 (La.App. 3rd Cir.1985)).
The court concluded Reliance’s defense of mitigation of damages raises other legally sufficient grounds to defeat the purchasers’ reconventional demand which are not part of the issues raised by the purchasers. It opined that allowing Reliance to amend its answer to include the defense at the beginning of the trial would have subjected the purchasers to a surprise “trial by ambush,” which is specifically what article 1005 was designed to prevent. 569 So.2d at 551.
Whether the failure to mitigate damages is properly characterized as an affirmative defense under the “any other matter constituting an affirmative defense” language of article 1005 is a question we need not decide, for we agree with Reliance that its *1283 proffered testimony was not an attempt to allege a failure of the purchasers to mitigate their damages. Rather, the proffered testimony of Albert Mintz, the owner of the property who had contracted with the purchasers for the sale of the site, was to the effect that on Friday, July 29, he told Donald Bernard that he remained willing to sell the property to the purchasers through Monday, August 1, on the same terms and conditions, if the purchasers could secure the dissolution of the temporary restraining order. Reliance contends, and we agree, this testimony would have been offered in an effort to refute an essential element of the purchasers’ case, viz. the issue of causation.
The procedure for obtaining damages for the wrongful issuance of a temporary restraining order is set forth in La. Code Civ. Proc. art. 3608.[2] See Lamastus v. Discon, 552 So.2d 741, 743 (La.App. 1st Cir.1989), writ denied, 558 So.2d 1127 (La.1990) (citing Joseph Fein Caterer, Inc. v. Borenstein, 459 So.2d 673, 675 (La.App. 4th Cir. 1984)). It is axiomatic that to obtain damages for the wrongful issuance of a temporary restraining order the party seeking relief must prove: (a) the temporary restraining order was wrongfully issued; and (b) the wrongful issuance was the proximate cause of the party’s damages.
In this case, neither party argues the temporary restraining order was not wrongfully issued, especially in light of the fact it was dissolved early the next business day. The parties do dispute, however, the causation element of the purchasers’ damages. Although the temporary restraining order may have been the initial cause of the cancellation of the act of sale, Reliance contends the following facts serve merely to refute the purchasers’ allegations on causation: the purchasers knew Mintz would have consummated the sale under the same terms one business day later if the order were lifted; the order was in fact lifted early the next business day; and, the purchasers failed to take action to pass the act of sale on August 1. According to Reliance, the purchasers’ inaction on August 1, despite their knowledge and ability to pass the act of sale on that date, constitutes a superseding cause of any damages they sustained and thus negates an essential element of the purchasers’ case.
We have concluded, in another context, that a defendant’s attempt to defeat a plaintiff’s action by disproving an essential element of the plaintiff’s claim, where the attempt neither raised a new matter nor assumed the allegations in the petition to be true, is in reality a negative defense which seeks to refute an essential allegation of the plaintiff’s petition. Keller v. Amedeo, 512 So.2d 385, 388 (La.1987). An affirmative defense, by contrast, raises new matters which, assuming the allegations in the petition to be true, constitute a defense to the action and will have the effect of defeating plaintiff’s demand on its merits. Keller, 512 So.2d at 387; Webster v. Rushing, 316 So.2d 111, 114 (La.1975). Unlike, for example, the affirmative defenses of “discharge in bankruptcy”, see Rider v. Fontenot, 463 So.2d 951, 956 (La.App. 3rd Cir.1985), or, in the criminal context, “justification,” see State v. Cheatwood, 458 So.2d 907, 910, 910 n. 4 (La.1984), neither of which concern legal and factual questions raised by plaintiff’s petition (or the state’s indictment), but which instead raise another legally sufficient ground to defeat an action, Reliance’s proffered testimony aims directly at an essential element of the purchasers’ claim (causation) and, if believed by the fact-finder, could undermine and would refute that element of the purchasers’ case.
Accordingly, we disagree with the court of appeal’s characterization of the proffered testimony as an allegation of failure to mitigate damages. Our view is the testimony is offered in an effort by Reliance to refute the causation element of the purchasers’ claim. Hence, it was not required to be affirmatively pleaded, and the trial *1284 court erred in so ruling. We express no opinion as to the credibility of the witnesses; that is exclusively the province of the fact-finder. We do hold, however, the trial court erred in failing to consider the testimony, and, consequently, we reverse the holding of the court of appeal on this issue and remand the case to the trial court to consider all the evidence, including both Reliance’s proffered testimony and the testimony included in the purchasers’ rebuttal proffer.
III.
Reliance next argues, as it did in the court of appeal, that the trial court erred in failing to find the purchasers were not prepared to execute the act of sale on July 29, 1983, and the sale would not have occurred notwithstanding the issuance of the restraining order.[3] It contends the sale documents required a mortgage on the property to secure the loan by, among others, Floyd Thacker and his wife. The Thackers were not in New Orleans on July 29. Reliance argues no valid power of attorney to execute the mortgage existed on behalf of the Thackers and thus the sale could not have been completed.
The purchasers introduced the deposition of John E. Green, Jr., at trial. Green, an employee of Thacker, testified that approximately one week before the date of the act of sale, he was given a power of attorney by the Thackers to sign and execute all documents pertaining to the sale of the property. Green believed this authority included the execution of all mortgages or promissory notes in connection with the financing of the purchase of the property on behalf of the Thackers.
Green could neither produce the actual power of attorney, as it had been destroyed prior to the date of the deposition, nor recall the exact language of the document. The Commissioner who conducted the trial, however, believed Green’s testimony that the authority had been given to him to execute the necessary documents on behalf of the Thackers on July 29. Reliance introduced no evidence to contradict Green’s testimony. We have no reason, therefore, to overturn the fact-finder’s decision in this regard, as we cannot deem it manifestly erroneous. See Rosell v. ESCO, 549 So.2d 840, 844 (La.1989). There is no reason to suspect that had the temporary restraining order not been issued Green would not have appeared at the act of sale and signed on behalf of the Thackers.
Reliance also argues the power of attorney was insufficient as it did not express the property description or purchase price and did not give Green the specific authority to execute a mortgage on behalf of the Thackers, as required by the Louisiana law of mandate. La.Civ.Code arts. 2996, 2997. Green, however, testified the power of attorney had been executed by the Thackers for the specific purpose of purchasing the subject property. James Arceneaux, the attorney who intended to close the act of sale, testified he was unaware of any impediment with the Thack-ers’ power of attorney which would have prevented the sale from occurring as scheduled.
Nothing in the record conclusively indicates the power of attorney was in any way deficient. In fact, the record indicates the sale was prevented on July 29 because of the temporary restraining order obtained by Johnsa and World Construction Co. The argument that the purchasers were not prepared to purchase the property because of an insufficient power of attorney is speculative, and we decline to upset the fact-finder’s conclusion on the issue.
IV.
Finally, Reliance contends the award of judicial interest on the $100,000 assessed as damages against it is in excess of the face, or penal, amount of the bond and is therefore erroneous. In essence, Reliance contends no recovery can be had against the surety on an injunction bond beyond the penalty named in the bond. It urges its liability was predetermined in the contract and when it decides to undertake the suretyship obligation it factors its risk *1285 (potential exposure) into the premium charged. It argues it cannot and should not be required to answer for more than the sum it has undertaken to pay on behalf of its principal.
Because we are remanding the case to the trial court for a reevaluation of all the evidence, we express no opinion on this issue, as we believe its resolution at this time would be premature. The trial court, on remand, may very well reach the same result it reached previously, but it also may assess damages in a lesser amount so that even with interest added the total would not exceed the face amount of the bond, or it may assess no damages at all. In either event, the question whether legal interest may be assessed when the resultant sum will exceed the penal amount of the bond may not be squarely presented, and the issue is, therefore, not ripe for our review. Accordingly, that part of the judgment of the court of appeal which affirmed the trial court’s assessment of judicial interest is vacated.
V.
For the foregoing reasons, we affirm the judgment of the court of appeal in part, reverse in part, vacate in part, and remand the case to the trial court for reevaluation of all the evidence including the erroneously excluded proffered testimony.
AFFIRMED IN PART; REVERSED IN PART; VACATED IN PART, AND REMANDED TO THE TRIAL COURT.
CALOGERO, C.J., additionally assigns concurring reasons.

. Article 1005 provides:
The answer shall set forth affirmatively arbitration and award, assumption of risk, contributory negligence, discharge in bankruptcy, division, duress, error or mistake, estoppel, extinguishment of the obligation in any manner, failure of consideration, fraud, illegality, injury by fellow servant, transaction or compromise, and any other matter constituting an affirmative defense....

. Article 3608 provides: "[t]he court may allow damages for the wrongful issuance of a temporary restraining order or preliminary injunction on a motion to dissolve or on a reconventional demand.... ”

. This likewise addresses the damage element of causation.