IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

DIVISION II

| | |
|---|---|
| JONATHAN LIFFGENS and ELAINE LIFFGENS, husband and wife,<br><br>             Appellants,<br><br>    v.<br><br>LUKE DORNY and MARLO DORNY, husband and wife; and ELISABETH KANNE,<br><br>             Respondents. | No. 55539-5-II<br><br><br><br>UNPUBLISHED OPINION |

WORSWICK, J. — Jonathan and Elaine Liffgens (collectively, the Liffgens) own a home on a lot of land on Bainbridge Island. (The Liffgens Property). Luke and Marlo Dorny and Elisabeth Kanne (collectively, the Dornys) own a lot that abuts the Liffgens' to the north. (The Dorny Property). The Dornys have an express easement that crosses a portion of the Liffgens Property for "access and utilities." The Liffgens appeal the trial court's order granting partial summary judgment to the Dornys in which the court dissolved a temporary injunction restraining the Dornys from using the easement to access their lot, and ruled that the Dornys could use the portion of the easement that burdens the Liffgens Property for ingress and egress. The Liffgens also appeal the trial court's award of damages and attorney fees to the Dornys following a bench trial on the issue of damages.

The Liffgens argue that (1) partial summary judgment was not appropriate because genuine issues of material fact existed regarding the scope of the easement, (2) the trial court was

therefore required to balance the equities between the dominant and servient estate in a trial, (3) the trial court erred in ruling the temporary injunction was wrongful, (4) the trial court's award of damages was not supported by substantial evidence, (5) the trial court abused its discretion when it awarded attorney fees in excess of the value of the injunction bond, and (6) the trial court erred by awarding attorney fees beyond those necessary to dissolve the injunction. We hold that the Liffgens' arguments on (1)–(5) fail, but we agree that the trial court erred by awarding attorney fees through trial on issue (6). Furthermore, we deny the Dornys' request for attorney fees on appeal. Accordingly, we affirm in part, reverse in part, and remand to the trial court to calculate appropriate attorney fees.

FACTS

I. PROPERTY DESCRIPTION AND EASEMENT

The Liffgens Property is a lot that includes their home on Olympic Terrace Ave NE on Bainbridge Island. The Liffgens Property is roughly a rectangle in the southwest corner of short plat number 4661, also called the DeGroot short plat. (Hereinafter, short plat.) The short plat is divided into four lots. The Liffgens Property is lot A in the short plat, as shown in Image 1 below. Olympic Terrace Ave NE runs north-and-south to the west of the short plat. This is shown at the left extreme of the below image. Lots A, C, and D have all been developed. The undeveloped lot B is the Dorny Property.



Image 1: Clerk's Papers (CP) at 150.

To access the properties in the short plat, an access road runs east-west from Olympic Terrace Ave NE. A 30-foot wide easement perpendicularly connects to this access road and bifurcates the middle of the short plat, running roughly north-south between lots A and D, and B and C, respectively. The width of the easement is divided evenly across the short plat's centerline, with 15 feet laying on either side of the lot division. The easement terminates 30 feet into lots B and C.

Within the easement, falling on its eastern side, there is a paved road, 10 feet in width, which existed before this dispute. This paved road abuts the Liffgens Property, serves lot C, and does not touch the Dorny Property. It is labeled as "existing driveway" in Image 2, below. The center point of Image 2 is the intersection of the four lots.



Image 2: CP at 29.

The short plat, including the easement, was created in 1988 after a subdivision application.

The Liffgens' deed describes their property, in pertinent part, as lot A, together with "[a]n *easement for ingress, egress and utilities* 30 feet in width as described and delineated in Short Plat No. 4661 recorded under Auditor's File No. 8804200074." CP at 1442 (emphasis added). The document creating the short plat from Auditor's File No. 8804200074 defines the Liffgens Property, in pertinent part, as "[l]ot A . . . Together with and [s]ubject to an *access and utilities easement over, under and across* a 30 foot strip the centerline of which is the East line of [the lot described as lot A]." CP at 311 (emphasis added).

Likewise, the deed for the Dorny Property describes the lot as lot B, with "[a]n easement for access and utilities 30 feet in width as described and delineated on Short Subdivision No. 4661, recorded under Auditor's File No. 8804200074." CP at 145. The document creating the short plat from Auditor's File No. 8804200074 defines the Dorny Property, in pertinent part, as

> Lot B . . . Together with and subject to an easement for access and utilities over, under and across a 30 foot strip the centerline of which begins N 1*20'35" E 30.00 feet from the Southeast corner of [lot B], and runs S 1*20'35" W 30.00 feet; thence on a curve to the right, the center of which bears S 75*14'20" W 107 feet, an arc distance of 73.20 feet; thence S 24*26' W 101.04 feet to the terminus. Except the South 30 feet thereof.

CP at 311.

In August 2019, the Dornys obtained permits to build a home on their property. The building permit and approved site plan from the City of Bainbridge Island identified an area on the western portion of the easement as necessary for access to the Dorny Property during construction. This access area is marked as "temporary driveway for construction" on Image 2 above. (Hereinafter, new driveway.) CP at 29. The Dornys planned for the new driveway to run

5

through the access and utilities portion of the easement, over the extreme northeastern corner of the Liffgens Property.

The Dornys' original building permit expired on March 4, 2020, and their financing and pricing for construction was tied to their permit timeframe and city-approved plan. The Dornys chose to create the new driveway because it was approved by the City and because their home builders informed them that large trucks, cranes, and other equipment would not be able to access the building site on the existing paved road. The location of an above-ground electrical transformer riser, labeled as the square with a "T" in Image 2, prevented the construction vehicles from making a 90-degree turn onto the Dorny Property off the existing paved road. CP at 19-20.

At some point before construction began on the Dorny Property, Jonathan Liffgens and Luke Dorny discussed the Dornys' plans. Jonathan Liffgens called the area within the easement a "buffer" between his "relaxation area" and the existing paved road. CP at 91. Jonathan Liffgens offered to relocate the transformer at the Liffgens' expense, rather than agreeing to the Dornys' new driveway, but Dorny rejected the idea because it might cause him cost and time overruns.[1]

Before installing the new driveway, the Dornys' workers were able to use the existing road to get one excavator onto the Dorny Property north of the transformer because it was a tracked vehicle that could turn 90 degrees in a fixed position. However, the workers were unable to get any other equipment onto the Dorny property.

_____

[1] Indeed, any deviation from the approved building plan had to be submitted to the City for approval.

## II. TEMPORARY INJUNCTION

On September 26, 2019, the Dornys installed the new driveway made of gravel within the western portion of the easement in the area defined by their site plan. To create the new driveway, the Dornys removed several trees that were within the easement on the Liffgens Property. The gravel the Dornys laid down as a road surface also covered a storm drain within the easement area.

On the morning of September 27, the Liffgens filed a "Motion for Temporary Restraining Order," which stated as a prayer for relief "that [the Dornys] be restrained and enjoined from removing any trees or shrubs, moving or disturbing the earth/dirt, or disturbing the [Liffgens Property] in any way." CP at 10. The Liffgens argued that the trial court should "'balance[] the inconvenience to the dominant estate with the hardship to the servient estate'" and declare the parties' respective easement rights. CP at 9 (quoting *Steury v. Johnson*, 90 Wn. App. 401, 404, 957 P.2d 772 (1998)).

The Liffgens appeared ex parte in superior court that same day before Judge Adams. The Liffgens' counsel stated that the Liffgens were "seeking a temporary restraining order" due to the Dornys activities in the easement area on the Liffgens Property. Verbatim Report of Proceedings (VRP) (Sept. 27, 2019) at 2. The Liffgens' counsel represented that the existing paved road provided unobstructed access to the Dorny Property and the Dornys construction efforts would not be improved by the new driveway. Jonathan Liffgens testified at the ex parte hearing and told the court the Dornys would not be prevented from developing their property if the temporary injunction was granted. Counsel further stated that the Dornys were moving in multiple pieces of heavy equipment without the new driveway and that the Dornys now had two access roads to

7

their property. Jonathan Liffgens testified that the Dornys' clearing of the driveway put his electrical supply at risk and cut off a stream running to the covered storm drain.

After hearing argument from Liffgens' counsel and testimony from Jonathan Liffgens, Judge Adams stated that "for a temporary restraining order, I have to be satisfied that there's an emergency." VRP (Sept. 27, 2019) at 11. Jonathan Liffgens then further testified that the Dornys had removed six of his trees and buried a stream. Judge Adams responded, "Okay. I'll sign the order." VRP (Sept. 27, 2019) at 11.

The court then signed a "Temporary Restraining Order with Order to Show Cause." CP at 11. Although the "motion" portion of the order requested the Dornys be restrained, the "order" portion itself ordered only that the Dornys appear to show cause on October 11 why the temporary injunction should not be granted. CP at 11-12. After the Liffgens obtained the "Temporary Restraining Order with Order to Show Cause," the Liffgens' counsel contacted the Dornys' counsel in an email and informed her that "neither the Dornys nor their agents may do any additional work on the Liffgens Property, nor can they use the temporary road." CP at 436. The Dornys' counsel informed Luke Dorny, who told the construction workers to halt work that day. On either September 27 or 28, the Liffgens cordoned off the new driveway and erected "no trespassing" signs in the new driveway. CP at 445.

The Liffgens also filed a summons and a complaint for declaratory judgment and a permanent injunction. The Liffgens requested a permanent injunction to enjoin the Dornys from constructing a new driveway and declaratory judgment to set forth the rights of each party to the easement.

On September 30, the Dornys appeared before Judge Houser and requested the court quash the restraining order signed by Judge Adams. Judge Houser stepped off the bench to confer with Judge Adams and when he returned, he informed the Dornys that the order was for show cause only, and that no injunction had been entered.

On October 4, the Dornys filed a motion to strike the October 11 show cause hearing and requested sanctions against the Liffgens' counsel for requesting an injunction without first notifying the adverse party under CR 65. The Dornys also filed a response to the Liffgens' motion for the temporary restraining order and order to show cause. In it, the Dornys argued that the easement was unambiguous and provided for road access.

Both parties appeared at the show cause hearing before Judge Adams on October 11. The Liffgens again argued that the court should apply a balancing test and rule that the Dornys' use of the easement created hardship on the servient estate. The court ruled that the grounds for a preliminary injunction were met, granted the Liffgens' motion, and set a bond amount of $20,000.

On October 22, the Dornys filed an answer and counterclaims. The Dornys sought damages, affirmation of the right to use the easement—including the new road, a permanent injunction prohibiting the Liffgens from interfering with the Dornys' use and enjoyment of easement, and reasonable attorney fees.

On October 25, the Liffgens filed an amended complaint for trespass to easement and declaratory judgment. The Liffgens sought declaratory judgment setting the rights to the easement, a permanent injunction enjoining the Dornys from using the new driveway, a finding of trespass to easement, and award of damages and attorney fees.

On November 4, the Dornys filed a motion for reconsideration of the order for a preliminary injunction. The Dornys argued that alternatives to the new driveway were not compliant with City codes, that the trial court need not balance the effects on the dominant and servient estates because that test applies only when the burden on the servient estate is greater than originally contemplated by the grant. After a hearing on the motion before Judge Adams, the trial court denied the motion for reconsideration.

### III. DORNYS' MOTION FOR PARTIAL SUMMARY JUDGMENT

On January 4, 2020, the Dornys filed a motion for partial summary judgment under CR 56(c). The Dornys argued that the balancing test the Liffgens relied on in their motion for the temporary injunction does not apply to unambiguous easements, that the wording of the easement here unambiguously stated "access," and that the Dornys were not subjecting the easement to greater than that contemplated by the plain language of the easement grant. The Dornys further argued that the balancing test does not apply when plaintiffs know of the easement burdening their property, and that when a dominant estate seeks to use an easement for its intended purpose, interferences must be removed.

The Liffgens filed a response on January 27, arguing again that "the [Dornys'] easement rights must be balanced against the fee simple property rights of [the Liffgens] as the servient estate holder." CP at 285. The Liffgens argued that the Dornys were re-arguing issues that Judge Adams already settled in violation of Kitsap County Local Civil Rule 7(B)(1)(c), which

states that an order applied for and refused shall not be presented to another judge.[2] The Liffgens conceded that the Dornys possessed a valid easement for "ingress, egress, and utilities" but argued that the Dornys' use of the easement went beyond the easement's scope. CP at 285. By this logic, the Liffgens argued that the question of scope created an issue of material fact that required a trial.

To support this argument, the Liffgens included a letter from Shad Smallwood, a construction contractor who was not working on the Dorny property who had visited the site with the Liffgens. Smallwood stated that "the approach using the current construction access (direct turn onto property from paved road) could prove to be less expensive" than the new driveway because of drainage issues. CP at 317. However, he stated, "Again, at this time I am only guessing from my experience and actually [sic] requirements may prove otherwise." CP at 317.

In a reply filed February 3, the Dornys argued Local Civil Rule 7(B)(1)(c) did not apply because the Dornys were not seeking a "[r]eapplication for [an] [o]rder," and that the motion

---

[2] KCLCR 7(B)(1)(c) provides:

> Reapplication for Order. When an order has been applied for and refused in whole or in part (unless without prejudice), or has been granted conditionally and the condition has not been performed, the same application for an order shall not be presented to another judge.
>
> If a subsequent application is made upon an alleged different statement of facts or law, it shall be shown by affidavit what application was made, when, and to what judge; what order or decision was made thereon; and what new facts or law are claimed to be shown.
>
> For failure to comply with this requirement, any order made upon such subsequent application shall be set aside upon request of an opposing party.

before the trial court—summary judgment—was a different issue than the temporary restraining order the Liffgens requested. CP at 319. The Dornys further argued that the court should determine the scope of the easement from the language of the easement, not the facts and circumstances. The Dornys argued that under *Thompson v. Smith*, 59 Wn.2d 397, 410, 367 P.2d 798 (1962), the servient estate must remove interferences with the dominant estate's use when the dominant estate seeks to use an easement for its stated purpose.

The Dornys' summary judgment motion came before Judge Forbes on February 7. The Dornys argued that their use of the easement fell within the unambiguous language of the easement:

> There is a short-plat application. There is the plat itself. There is residential zoning on the face of the short plat application; the City-approved building permit. There is a site plan that has been approved by the City that demonstrates where this access is. It is all within the easement area, and it is authorized to build a single-family residence. There really can't be any less of a burden . . . that was contemplated than one single-family residence. [The Liffgens] are not alleging that there is some uncontemplated burden being placed upon [the Liffgens Property].
>
> [The Liffgens] admitted that [the easement] was created for access. It's clear by its terms within the easement documents.

VRP (Feb. 7, 2020) at 10-11.

The Liffgens argued that Judge Adams's decision that the court must apply a balancing test was binding on the court.[3]

The trial court agreed with the Dornys. The court lifted the injunction on February 7. In its order on partial summary judgment, the court ruled:

---

[3] "THE COURT: So your theory is that even if Judge Adams is wrong I don't have a choice but to follow her analysis for the remainder of this case all the way through verdict and decision and whatnot . . . .
[LIFFGENS COUNSEL]: That is my position." VRP (Feb. 7, 2020) at 17.

The Court, hereby ORDERS, ADJUDGES and DECREES that:

1. [The Dornys'] Motion for Partial Summary Judgment is hereby GRANTED.

2. That the use of the part of the Easement on the Liffgens' Property for access to the Dorny Property is authorized by and within the scope of the Easement.

3. That the [Dornys'] and future owners of the Dorny Property have the right to the use of that part of the Easement that is on the Liffgens' Property for ingress and egress to the Dorny Property.

4. That the use of the part of the Easement on the Liffgens' Property for providing utilities to the Dorny Property is authorized by and within the scope of the Easement.

5. That the [Dornys] and future owners of the Dorny Property have the right to the use that part of the Easement that is on the Liffgens' Property for providing utilities to the Dorny Property.

6. That the [Dornys] and future owners of the Dorny Property have the right to use that part of the Easement that burdens the Liffgens Property for access to and from the Dorny Property as approved by the City of Bainbridge Island in Building Permit No. 23799 and that that use is authorized by and within the scope of the Easement.

7. That the [Dornys] have the right to the use of that part of the Easement that is on the Liffgens' Property for the provision of utilities to the Dorny Property is authorized by and within the scope of the Easement.

8. That the [Liffgens] are enjoined from interfering with the use of current and future owners of the Dorny Property's use of the Easement for access to and from the Dorny Property.

9. That the Preliminary Injunction issued by this Court on October 25, 2019 is dissolved.

CP at 349-50.

13

The court reserved on the issue of damages for trial. The Liffgens filed a motion for reconsideration on February 18, which the trial court denied without hearing.[4]

IV. TRIAL FOR DAMAGES

The trial for damages came before Judge Forbes in August 2020.

Luke Dorny testified that he ordered his crews to stop working and cease using the new driveway after Liffgens' attorney sent him an email stating that she had obtained a temporary injunction on September 27, 2019. The Liffgens' attorney also attached a copy of the order, and a copy of the complaint.

Nathan Cleaver, a contractor working on clearing the Dorny Property, testified that the workers were able to get only one excavator, and no trucks or other equipment, onto the Dorny Property before they put in the new driveway because of the location of the transformer and other conditions. Cleaver testified that Luke Dorny informed him the workers were not allowed to use the new driveway due to the temporary injunction. He further testified that being unable to use the new driveway caused significant delays to the project, resulting in cost increases. He explained that the workers attempted to clear the land using one bucket at a time, and bringing the buckets to a truck on the existing paved road, but that it would have been unsafe for the workers to back vehicles around the transformer.

Cleaver also testified to excess charges that he invoiced the Dornys caused by the extra time it took to clear the property as well as the weather conditions. He testified that at the time of trial, the Dornys had paid their invoices for the work, but not the excess fees.

---

[4] The Liffgens did not appeal the order denying the motion for reconsideration. Notice of Appeal, No. 19-2-02670-18 (Mar. 9, 2021).

Brandy Kelley and Mark Fritts, both of whom work for the construction company that was building the Dorny home, testified to delays that resulted in cost overruns. Fritts, the construction superintendent on the Dorny Property, testified that "it was not possible to begin any construction" without access to the new driveway. 1 VRP at 118. He testified that he could not get his trucks onto the property via the existing paved road and that "the only way into the [Dorny] property was to cut at an angle through the existing easement." 1 VRP at 124. He further testified that he was not released to begin construction until June 2020. Kelley testified that she understood work on the Dorny Property was delayed due to the Dornys' "legal obligations." 1 VRP at 82.

Jonathan Liffgens also testified. When questioned about whether the Dorny workers cut off a stream on the Liffgens Property, Jonathan Liffgens testified that it was a swale, and that he did not know Kitsap County's classification system for streams. He also testified, "You know, a stream is a stream. Sometimes they're dry; sometimes they're not." 3 VRP at 554.

Smallwood testified that "[t]here is always other options to performing the work," that he believed small trucks would be able to access the Dorny property by turning north of the transformer off the paved road, but he said that larger trucks would "have difficulty making that 90-degree turn." 2 VRP at 422.

Bobbi Neal, a property manager at Windermere Property Management who specializes in the rental market on Bainbridge Island, also testified. Neal testified that, in her opinion, a home with a floor plan like the one planned for the Dornys' house would rent for $4,200 per month, given the market conditions at the time of trial.

15

The trial court entered extensive findings of fact and conclusions of law. Throughout the findings, the court referred to the new driveway as the "Access Road." Relevant here, the court found:

14. [Liffgens'] counsel and Jonathan Liffgens made material represent-tations to the Court at the hearing on September 27, 2019 that appeared to impact the Court's decision to grant the request for a temporary restraining order. Of the factual claims asserted, there were claims that were ultimately not supported by the evidence. Specifically, [the Liffgens] advised the Court: 1) that the existing paved road went to the [Dorny] Property and provided direct, unobstructed access; 2) that the [Dornys] would not be prevented from developing their property if a temporary restraining order were issued; 3) that the [Dornys] had brought in several large pieces of machinery using the paved road; 4) that the [Dornys] had two accesses to their property after the Access Road was installed; 5) that the transformer supplying power to the [Liffgens'] home was at risk from Defendants' activities; and 6) that [the Dornys] had "cut off" a stream running to a storm drain. . . .

. . . .

30. On September 27, 2019, after review of the email from [the Liffgens'] attorney, the [Dornys] believed a temporary restraining order was in place and advised their contractors to cease use of the Access Road. The site development contractor, Nathan Cleaver . . . stopped use of the Access Road.

. . . .

34. After September 27, 2019 and until after the injunction was dissolved no large machinery or equipment entered the [Dorny] Property.

35. From September 27, 2019 until October 11, 2019 the [Dornys] were reasonably cautious about the legal effect of the temporary restraining order orally issued on September 27, 2019 and whether they were allowed to use the Access Road. This confusion persisted until October 11, 2019 and caused Defendants and their contractors to not use the Access Road during this time. This led to delays and less efficient/more costly work on the [Dorny] Property.

36. After the hearing on October 11, 2019, the [Dornys] advised their contractors not to use . . . the Access Road.

. . . .

38. There was delay to the construction of the [Dornys'] home caused by [the Liffgens] seeking a temporary restraining order on September 27, 2019, the

subsequent confusion caused by the written order prepared by the [Liffgens] that did not reflect the Court's order, and [the Liffgens'] attorney's email of that date notifying [the Dornys] that a temporary restraining order had been issued. The [Liffgens'] conduct resulted in [the Dornys] not using the Access Road as they would have absent an order being granted. . . .

39. There was delay to the [Dornys'] construction of their home caused by [the Liffgens] seeking and obtaining a preliminary injunction.

40. The temporary restraining order and the preliminary injunction caused delays in the work on the [Dorny] Property for approximately five and a half months from September 27, 2019 through March 18, 2020; and it caused the work to be less efficiently done which damaged the [Dornys].

. . . .

42. Access to the [Dorny] Property from the area north of the transformer was not possible for construction vehicles given the site conditions, topography and easement location.

. . . .

47. The damages incurred by [the Dornys] that are a direct result and proximately caused by the [Liffgens] seeking the temporary restraining order and the preliminary injunction, spanning September 27, 2019 to March 18, 2020, are:

a. $467.90 in ongoing insurance payments . . .

b. $27,550.98 total for site work, caused by the inability to fully access the site via the Access Road, this caused the use of less efficient equipment for site work and equipment with less capacity to complete clearing of debris, idling of excavator, which was on site while waiting for resolution of legal issues, and an increase of 20% on amount estimated due to delay to resume project in the wet season.

c. $4,920.00 caused by increase in construction loan extension fees and penalties . . . because their home is not anticipated to be completed for an additional four months beyond the term of the 12-month construction loan.

d. $3,082.71 in ongoing construction loan payments . . . during the timeframe when the temporary restraining order and preliminary injunction prevented construction work from moving forward and until work could resume.

e. $2,738.66 for cost increases ($558.66 on January 6, 2020 and $2,180.00 on March 18, 2020) caused by the increase in construction costs and the lack of progress on site preparation work required under the contract . . .

f. $23,859.00 for loss of use / lost rental value of the home while under construction. [Citing RCW 7.40.200.]

48. These additional charges were included on invoices to the [Dornys] and were actually paid by the [Dornys].

. . . .

50. The sole issue presented in this case was whether an injunction should be ordered enjoining the [Dornys] from using the part of the [Liffgens] Property burdened by the easement to access the [Dorny] Property.

CP at 435-36, 439-44.

In its conclusions of law, the trial court determined that the temporary restraining order and preliminary injunction were "wrongfully issued." CP at 447. The court awarded the Dornys damages up to the bond amount of $20,000, plus interest. The court further awarded the Dornys attorney fees from September 27, 2019, through the court's decision on summary judgment, ruling that the fees were appropriate as equitable recovery. The court further awarded the Dornys attorney fees from summary judgment through trial. The court capped the Dornys' damages at the $20,000 bond amount, but awarded attorney fees in excess of the bond amount.

In November 2020, the Liffgens moved for a new trial. In their motion, the Liffgens argued that new evidence discovered after the conclusion of trial that showed that the Dornys delays were not due to the injunction, but instead building code and site violations. Jonathan Liffgens declared that he observed no work being done on the Dorny Property during October

and communicated with the City, discovering that the Dorny construction was on hold pending further engineering. The court denied the Liffgens' motion for a new trial.[5]

In February 2021, the trial court entered orders awarding the Dornys attorney fees, entering judgment, quieting title in the easement, and enjoining the Liffgens from interfering with the current and future owners of the Dorny Property's use of the easement for access and utilities.

The Liffgens appeal the Order Granting the Motion for Partial Summary Judgment entered on February 7, 2020, the Findings of Fact and Conclusions of Law entered on November 9, 2020, and the Order Awarding Attorneys' Fees, Entering Judgment and Order Quieting Title in Easement and Permanent Injunction (Final Judgment) entered on February 8, 2021.

ANALYSIS

The Liffgens argue that the trial court erred when it entered summary judgment because there were genuine issues of material fact due to the ambiguous language of the easement. They contend that the trial court, Judge Forbes, erred by not following the ruling that the court, Judge Adams, entered in the preliminary injunction. Accordingly, the Liffgens argue, the trial court was required to hold a trial to balance the equities between the dominant and servient estates.

The Liffgens assign error to several of the trial court's findings of facts and conclusions of law from the trial for damages. They also assign error to the trial court's conclusion of law that the injunction was wrongfully issued.

---

[5] The Liffgens did not appeal the order denying their motion for a new trial. Notice of Appeal, No. 19-2-02670-18 (Mar. 9, 2021).

The Liffgens further assign error to the court's award of damages, arguing that that the findings were not supported by substantial evidence because the injunction did not proximately cause the construction delays. They also argue that the trial court erred in its calculation of actual damages and that the court erred in awarding damages for lost rents under RCW 7.40.200.

The Liffgens assign error to the court's finding of fact 50, that the "sole issue presented in this case was whether an injunction should be ordered enjoining the [Dornys] from using the part of the [Liffgens] property burdened by the easement," arguing that their original complaint was for more than just injunctive relief. Br. of Appellant at 43. The Liffgens argue that the court abused its discretion and committed error of law when it awarded the Dornys attorney fees beyond the value of the bond and from the inception of the case through trial.

With exception of their challenge to finding of fact 50 and the trial court's award of attorney fees through the date of trial, each of the Liffgens' arguments fail.

I. SUMMARY JUDGMENT

The Liffgens argue that the trial court erred when it granted the Dornys partial summary judgment dissolving the injunction, granting the Dornys use of the easement, and enjoining the Liffgens from interfering with use of the easement for access to the Dorny property. We disagree.

A.    *Legal Principles*

We review summary judgment orders de novo, performing the same inquiry as the trial court. *Wilkinson v. Chiwawa Cmtys. Ass'n*, 180 Wn.2d 241, 249, 327 P.3d 614 (2014). A court may grant summary judgment if there is no genuine issue of any material fact and the moving party is entitled to judgment as a matter of law. CR 56(c); *Wilkinson*, 180 Wn.2d at 249.

Judgment as a matter of law is warranted "if reasonable people could reach one conclusion based on the evidence when viewing the facts in the light most favorable to the nonmoving party." *O.S.T. v. Regence BlueShield*, 181 Wn.2d 691, 703, 335 P.3d 416 (2014).

 "We review questions of law and summary judgment rulings de novo, taking all the inferences in favor of the nonmoving party." *Schroeder v. Excelsior Mgmt. Grp.*, *LLC*, 177 Wn.2d 94, 104, 297 P.3d 677 (2013). But we review the trial court's ruling on whether to vacate a temporary restraining order for an abuse of discretion. *Schroeder*, 177 Wn.2d at 104.

The interpretation of an easement is a mixed question of law and fact. *Littlefair v. Schulze*, 169 Wn. App. 659, 665, 278 P.3d 218 (2012), *as amended* (Sept. 25, 2012). "The intent of the party who created the easement is a question of fact, whereas 'the legal consequence of that intent is a question of law.'" *Littlefair*, 169 Wn. App. at 665 (quoting *Sunnyside Valley Irrig. Dist. v. Dickie*, 149 Wn.2d 873, 880, 73 P.3d 369 (2003)). We look to the conveying instrument as a whole to determine intent, and where the plain language is unambiguous we will not look beyond that language. *Littlefair*, 169 Wn. App. at 665.

B.      *Plain Language of the Easement*

The Liffgens argue that the plain language of the easement is ambiguous and that this creates a material question of fact. We disagree.

We look to the intent of the grantor when discerning the meaning of the deed as a whole. *Newport Yacht Basin Ass'n of Condo. Owners v. Supreme Nw., Inc.*, 168 Wn. App. 56, 64, 277 P.3d 18 (2012). Where the plain language of the deed or easement is unambiguous, we will not consider extrinsic evidence. *Newport*, 168 Wn. App. at 64. "Accordingly, the language of the

written instrument is the best evidence of the intent of the original parties to a deed." *Newport*, 168 Wn. App. at 65.

The easement here was for "for access and utilities over, under and across a 30 foot strip [through] the centerline" of the short plat. CP at 311. The Liffgens' deed showed that their property was burdened by the easement for "ingress, egress and utilities." CP at 142. The word "access" here is plain on its face and unambiguously provides that a 30-foot swath of land may be used to get to and from the Dorny Property. This is doubly so when paired with the "ingress [and] egress" language in the Liffgens deed.

The Dorny Property is a "landlocked" plot within a residential subdivision. CP at 258. It was the only undeveloped lot in the subdivision. The paved road within the easement serves the Dornys' neighbors but does not extend onto the Dorny Property in any way, much less a way that provides a vehicle driveway onto the Dorny Property. Here, "access" means being able to get vehicles and equipment onto the subject property for use of the property. It could not mean anything else.

The Liffgens would have us look to the Dornys' proposed use of the easement and determine if that proposed use fits within the plain language of the easement, and if not, hold that the easement is ambiguous. But this puts the analytical cart before the horse. The nature of the dominant estate holder's use does not drive whether or not the easement is ambiguous; the language of the easement does. A court must first look to the plain language of the easement and *then* determine whether the proposed use falls within its scope. *See Littlefair*, 169 Wn. App. at 665. Here, the Dornys' use of the easement—access to their property—fell within the unambiguous plain language of the easement.

22

The Liffgens argue that a genuine issue of material fact exists because the term "access" is ambiguous. They argue that "access" does not necessarily mean access for vehicles. But this argument strains credulity. Even assuming, *arguendo*, that there is a question of whether vehicle access was contemplated by the deed, that question is easily answered. The grantor here created the easement in 1988, well after the advent of the automobile and the use of heavy trucks and equipment to build homes. The date of the creation of the short plat, including the easement, is plain on the face of the document. The Dornys should be able to use the easement as a driveway to and from their property. We hold that the easement was unambiguous as a matter of law.

C.      *Easement Scope*

Next, the Liffgens argue that a genuine issue of material fact existed over whether the Dornys' use of the easement was within the scope of the easement's plain language and whether that use overburdened the Liffgens Property. We disagree.

"When there is specific, unambiguous language creating an easement, that language may be determinative of the permitted uses and, thus, the parties' intent as to its scope." *Wilson & Son Ranch, LLC v. Hintz*, 162 Wn. App. 297, 306, 253 P.3d 470 (2011). "'Normal changes in the manner of use and resulting needs will not, without adequate showing, constitute an unreasonable deviation from the original grant of the easement.'" *Wilson & Son Ranch*, 162 Wn. App. at 306 (quoting *Logan v. Brodrick*, 29 Wn. App. 796, 800, 631 P.2d 429 (1981)). The owner of the servient estate has the burden of proving misuse of the easement. *Logan*, 29 Wn. App. at 800.

An affidavit that does not set forth facts as to what took place, an act, an incident, or a reality, and puts forth only supposition or opinion does not raise a genuine issue for trial.

*Grimwood v. Univ. of Puget Sound, Inc.*, 110 Wn.2d 355, 359, 753 P.2d 517 (1988), *abrogated on other grounds by Mikkelson v. Pub. Util. Dist. No. 1 of Kittitas County*, 189 Wn.2d 516, 404 P.3d 464 (2017); *Vacova Co. v. Farrell*, 62 Wn. App. 386, 395, 814 P.2d 255 (1991). A party opposing a motion for summary judgment may not rely on speculation or argumentative assertions that unresolved factual issues remain. *Seven Gables Corp. v. MGM/UA Entm't Co.*, 106 Wn.2d 1, 13, 721 P.2d 1 (1986). Instead, the nonmoving party must set forth specific facts that sufficiently rebut the moving parties' contentions and disclose that a genuine issue as to a material fact exists. *Seven Gables Corp.*, 106 Wn.2d at 13.

For the reasons stated above, the easement is unambiguous. Nothing about vehicles using an easement designated for ingress and egress is burdensome beyond the scope of the plain language of the easement.

Here, the express, unambiguous language in the Liffgens' deed placed no limitations on the easement's use, other than that it be used for ingress and egress. And that is what the summary judgment order allows the Dornys to use it for. The easement area went from nonuse, or—at most—use as a buffer, to use for accessing the Dorny Property as contemplated by the easement's plain language. This is a normal change that does not constitute an unreasonable deviation from the original grant. *Wilson & Son Ranch*, 162 Wn. App. at 306; *see also*

24

*Thompson*, 59 Wn.2d at 407 ("Mere nonuse, for no matter how long a period, would not extinguish the easement.").[6]

Moreover, the Liffgens made no showing at summary judgment that controverted the Dornys' need to access their property without making a sharp turn to the north of the transformer, where no road existed. The Liffgens conceded that the Dornys possessed a valid easement for "ingress, egress, and utilities." CP at 285. The Liffgens argued that the Dornys had alternatives to access the Dorny Property, supported by Smallwood's declaration. But Smallwood stated he was "only guessing . . . and actually [sic] requirements may prove otherwise." CP at 317. This was pure supposition and does not raise a genuine issue for trial.

Next, the Liffgens cite *Mielke v. Yellowstone Pipeline Co.*, 73 Wn. App. 621, 870 P.2d 1005 (1994), to argue that the Dornys taking out trees to gain access to the easement was "overburdensome" and beyond the scope of the easement. Br. of Appellant at 28. The Liffgens argue that under *Mielke*, their dispute over whether the Dornys could remove trees from the easement area is a dispute over "[t]he 'bounds of reasonable enjoyment' of the right of way [and] present[s] a material issue of fact." 73 Wn. App. at 625. But *Mielke* is distinguishable because there the scope of the easement was not established by its plain language. 73 Wn. App. at 624. The *Mielke* easement specified neither location nor width of the easement; both are present here.

---

[6] Throughout their brief, the Liffgens argue that a genuine issue of material fact existed because the Dornys were parking in the easement area, and that parking was not part of "access" under the plain language of the easement. Therefore, they argue a question of fact exists as to whether parking was an allowed use under the easement. But the order on summary judgment does not reference or allow parking in the easement area. The court ordered only that "the [Dornys'] and future owners of the Dorny Property have the right to the use of that part of the Easement that is on the Liffgens' Property for ingress and egress to the Dorny Property." CP at 349. The issue of parking is beyond the scope of this appeal because the trial court made no rulings on parking.

73 Wn. App. at 624. We hold that the Dornys' use of the easement was within the scope of the easement, and that the Liffgens raised no genuine issue of material fact as to the Dornys' intended use.

D.      *Balancing of Equities*

   1. *Balancing Is Not Required*

The Liffgens argue that the trial court erred in granting summary judgment because the burden the Dornys placed on the Liffgens Property required the court to hold a trial to balance the equites between the dominant and servient estates. The Dornys argue that their use of the easement was within the scope of the plain language and that the Liffgens could use the Liffgens Property within the easement until such time as the dominant estate—the Dorny Property—sought to use the easement for the purpose reserved by that plain language. We agree with the Dornys.

Normal changes in the easement's use do not, without more, constitute an unreasonable deviation from the original grant of the easement. *Wilson & Son Ranch*, 162 Wn. App. at 306. "The rule is that where a right of way is established by reservation, the land remains the property of the owner of the servient estate and he is entitled to use it for any purpose that does not interfere with the proper enjoyment of the easement." *Thompson*, 59 Wn.2d at 407-08. A servient estate is entitled to make use of the property in an easement until such time as the easement is "used for the purpose reserved." *Thompson*, 59 Wn.2d at 407. Mere nonuse, for no matter how long a period, will not extinguish an easement. *Thompson*, 59 Wn.2d at 407.

In *Thompson*, the owner of the servient estate constructed a paved parking slab within an easement area, and the owner of the dominant estate sued to have it removed. 59 Wn.2d at 403.

Our Supreme Court held that the servient estate owner could use his property within the easement area for any purpose not inconsistent with the ultimate use of the easement, but that he may be required to remove the slab "when and if it interferes with the use of that strip for road purposes." *Thompson*, 59 Wn.2d at 410.

The Liffgens Property is the servient estate. The area within the easement on the Liffgens Property was not being used. At most, the area within the easement was a buffer between the Liffgens' back yard and the existing paved road. The Dorny Property is the dominant estate and has a right to use the easement "for the purpose reserved," which, here, was ingress and egress. *Thompson*, 59 Wn.2d at 407. The trees, like the slab in *Thompson*, were not inconsistent with the ultimate use of the easement, but interfered with the Dornys' use of the easement for access purposes. The properties here are within a residential subdivision and development of a home on a vacant lot is a normal change to be expected in such locations. Accordingly, the Dornys' use of the easement to access their lot was not an unreasonable deviation from the original, unambiguous grant of the easement.

The Liffgens rely on one quote from *Thompson* to argue that the trial court erred when it entered summary judgment and that the court should have held a trial to determine whether the Dornys' use fell within the "purpose reserved" by applying "the balancing test laid out in *Thompson*." Br. of Appellant at 36. The *Thompson* court, quoting a California case as persuasive authority, noted that "[t]he respective rights of the two parties . . . are not absolute, but must be construed to permit a due and reasonable enjoyment of both interests so long as that is possible." 59 Wn.2d at 409 (quoting *City of Pasadena v. Cal.-Mich. Land & Water Co.*, 17 Cal.2d 576, 583, 110 P.2d 983 (1941)).

27

But this statement alone does not establish a balancing test requiring a trial in every case, least of all when the language of the easement is unambiguous. If it did, then courts would be required to hold a trial on every single easement dispute to balance the equities between the estates. And owners of raw land could be forced to litigate every easement providing access to their properties. Instead, "When there is specific, unambiguous language creating an easement, that language may be determinative of the permitted uses and, thus, the parties' intent as to its scope." *Wilson & Son Ranch*, 162 Wn. App. 306.

It is true that courts have used this quote from *Thompson* and its attendant logic to establish a balancing test between the servient owner's burden and the dominant owner's inconvenience. *See, e.g.*, *Steury*, 90 Wn. App. at 406 (remanding for trial because "the balancing of the servient owner's burden with the dominant owner's inconvenience are fact-driven inquiries"); *Rupert v. Gunter*, 31 Wn. App. 27, 31-32, 640 P.2d 36 (1982) (affirming the trial court's ruling that the owner of a servient estate may reasonably restrict use of an easement where the servient estate is being subjected to a greater burden that originally contemplated by the easement grant). But these cases are inapt here for two reasons.

First, the cases with a balancing test involve changed circumstances (i.e., increased and unauthorized use of the easement). *See Rupert*, 31 Wn. App. at 29-31 (general public began speeding down an easement); *Steury*, 90 Wn. App. at 403-05 (nonresidents using the easement 50-60 times a day). The Liffgens Property does not suffer from an unauthorized use of the easement and the use was contemplated by the plain language of the easement.

Second, as *Steury* states, these cases apply only where "the easement is ambiguous or silent regarding certain points." 90 Wn. App. at 405. That is not the case here. Accordingly, we

hold that the trial court properly granted summary judgment because it was not required to conduct a balancing of the equities at a trial.

2. *Judge Forbes's Ruling*

The Liffgens then argue that the trial court abused its discretion when it granted the Dornys' motion for summary judgment because the ruling was contrary to RCW 2.08.160 and Kitsap County Local Civil Rules. We disagree.

RCW 2.08.160 provides, in pertinent part,

Judgments, decrees, orders and proceedings of any session of the superior court held by one or more of the judges of said court, or by any judge of the superior court of another county . . . shall be equally effectual as if all the judges of such court presided at such session.

Kitsap County Local Civil Rule 7(B)(1)(c) provides:

Reapplication for Order. When an order has been applied for and refused in whole or in part (unless without prejudice), or has been granted conditionally and the condition has not been performed, the same application for an order shall not be presented to another judge.

If a subsequent application is made upon an alleged different statement of facts or law, it shall be shown by affidavit what application was made, when, and to what judge; what order or decision was made thereon; and what new facts or law are claimed to be shown.

For failure to comply with this requirement, any order made upon such subsequent application shall be set aside upon request of an opposing party.

Neither RCW 2.08.160 nor Kitsap County Local Civil Rule 7(B)(1)(c) applies here.

RCW 2.08.160 does not prevent one superior court judge from reaching a different decision as another, as the Liffgens contend, but rather that the ruling of one superior court judge is "equally effectual" as another's. Under this statute, Judge Forbes's dissolution of the

injunction issued by Judge Adams is the same as if Judge Forbes had dissolved an injunction she had issued herself. This argument fails.

Local Civil Rule 7(B)(1)(c) provides for the procedure on reapplication for an order. Here the Dornys made no "subsequent application . . . upon an alleged different statement of facts or law" on any of the motions regarding the preliminary injunction before Judge Adams. Instead, the Dornys filed a motion for summary judgment, which is an entirely different issue and order application. The local civil rule does not apply.

The Liffgens further appear to argue throughout their brief that we are bound by Judge Adams's ruling in the preliminary injunction, or at least that Judge Forbes was bound by Judge Adams's ruling. *E.g.*, Br. of Appellant at 26-27. But it is axiomatic that the trial court has the authority to dissolve *temporary* injunctions or otherwise modify initial judgments. *See, e.g.*, *Ledcor Indus. (USA), Inc., v. Mut. of Enumclaw Ins. Co.*, 150 Wn. App. 1, 14 n. 33, 206 P.3d 1255 (2009) (the superior court may modify its original judgment where the claims of the parties are not final under CR 54(b)); *see also* CR 60(b)(6). "Motions to dissolve or modify injunctions may be made in open court, or before a judge of the superior court, at any time after reasonable notice to the adverse party." RCW 7.40.180.

Thus, we hold that the trial court properly granted the Dornys partial summary judgment.

## II. TRIAL FOR DAMAGES

The Liffgens also assign error to several of the trial court's findings of fact and conclusions of law from the trial for damages. They assign error to the trial court's conclusions of law that the injunction was wrongfully issued, the award of damages, the court's calculation of damages, and its award of attorney fees to the Dornys. The Liffgens also argue that the court

abused its discretion and committed error of law when it awarded the Dornys attorney fees

beyond the value of the bond and from the inception of the case through trial. We agree that the

trial court abused its discretion when it awarded the Dornys attorney fees through trial, but we

disagree with the Liffgens' remaining arguments.

A.      *Legal Principles*

Our review of evidence from a bench trial is limited to determining whether the trial

court's contested findings of fact are supported by substantial evidence and whether those

findings support the conclusions of law. *Yorkston v. Whatcom County*, 11 Wn. App. 2d 815,

831, 461 P.3d 392, *review denied*, 195 Wn.2d 1020, 464 P.3d 202 (2020). "Substantial evidence

is the 'quantum of evidence sufficient to persuade a rational fair-minded person the premise is

true.'" *Yorkston*, 11 Wn. App. 2d at 831 (*quoting Sunnyside Valley Irrig. Dist.*, 149 Wn.2d at

879).

We review the evidence and all reasonable inferences from the evidence in the light most

favorable to the prevailing party. *Yorkston*, 11 Wn. App. 2d at 831. We do not weigh evidence

or make credibility determinations. *Yorkston*, 11 Wn. App. 2d at 831. Unchallenged findings of

fact are verities on appeal. *Grundy v. Brack Family Tr.*, 151 Wn. App. 557, 567, 213 P.3d 619

(2009). We review questions of law de novo. *Yorkston*, 11 Wn. App. 2d at 831. We review

conclusions of law mislabeled as findings of fact de novo as conclusions of law. *Grundy*, 151

Wn. App. at 567.

B.      *Wrongful Injunction*

The Liffgens argue that the trial court erred when it ruled that the preliminary injunction

was wrongful. We disagree.

The elements of a wrongful issuance claim are (1) that the order or injunction was issued, and (2) that it was issued wrongfully. *Fisher v. Parkview Props., Inc.*, 71 Wn. App. 468, 474, 859 P.2d 77 (1993), *as amended* (Nov. 22, 1993). The Liffgens do not contest that an injunction was issued.

"A temporary restraining order is proper only when there is a clear showing, based on specific facts, that the applicant will suffer irreparable injury, loss, or damage before an adversary hearing can be convened in open court." *Fisher*, 71 Wn. App. at 475; CR 65(b)(1). A temporary restraining order or injunction is issued wrongfully when it "would not have been ordered had the court been presented all of the facts.*" Knappett v. Locke*, 19 Wn. App. 586, 592, 576 P.2d 1327 (1978). "A temporary restraining order is 'wrongful' if it is dissolved at the conclusion of a full hearing." *Ino Ino, Inc. v. City of Bellevue*, 132 Wn.2d 103, 143, 937 P.2d 154 (1997), *amended*, 943 P.2d 1358 (Sept. 23, 1997) (plurality opinion).

Here, the trial court found that it had not been presented with all the facts during the preliminary injunction hearing because the Liffgens made material misrepresentations to the court at the hearing on September 27, 2019, that appeared to impact the court's decision to grant the request for a temporary restraining order. The court listed multiple factual claims that the Liffgens asserted and found that the claims were not supported by the evidence. The Liffgens do not assign error to these findings; thus, they are verities on appeal. *Grundy*, 151 Wn. App. at 567.

The court's conclusion that the injunction was wrongful flows naturally from these findings. After a presentation of the full facts at summary judgment, the court dissolved the injunction. This was proper because the court determined that the injunction would not have

been ordered had the court been presented with all the facts. *Knappett*, 19 Wn. App. at 592.

Accordingly, we hold that the trial court did not err when it concluded that the injunction was

wrongful.

C.      *Actual Damages*

The Liffgens argue that the trial court's award of damages was not supported by

substantial evidence. We disagree.

"An appellate court will not disturb an award of damages made by the fact finder unless it

is outside the range of substantial evidence in the record, shocks the conscience, or appears to

have been arrived at as the result of passion or prejudice." *224 Westlake, LLC v. Engstrom

Props., LLC*, 169 Wn. App. 700, 729, 281 P.3d 693 (2012).

1. *Calculation of Actual Damages*

The Liffgens argue that the trial court erred in its calculation of actual damages. But the

trial court also capped damages at $20,000, the amount of the bond. Thus, the calculations for

damages beyond $20,000 will not be incurred by the Liffgens, but are only findings adduced at

trial.

a. *Additional Charges from Contractors*

The Liffgens first argue that the trial court erred in calculating the Dornys' actual

damages because it was unclear from the record whether the Dornys paid the full amount on each

invoice of the excess damages. Br. of Appellant at 55. But this is a distinction without a

difference: substantial evidence shows that the Dornys incurred debts to their contractors from

delays to construction. Whether the Dornys paid all those invoices at the time of trial is not

relevant to the amount of excess expenses the Dornys incurred. Paid or not, the Dornys were

damaged. The Liffgens cite to no authority that says otherwise, and we assume there is none. *Peterson v. Dep't of Labor & Indus.*, 17 Wn. App. 2d 208, 237, 485 P.3d 338 (2021).

The Liffgens do not assign error to the court's individual findings on each dollar amount. Thus, the amounts the court determined the Dornys incurred are verities on appeal. The trial court found that the excess charges the Dornys incurred due to delays alone were more than $20,000, with $27,550.98 coming from delays to site work alone. These uncontested findings alone amount to damages reaching the $20,000 cap.

b. *Lost Rent*

Next, the Liffgens argue that the trial court erred when it found the Dornys incurred damages of $23,859 for loss of use or rental value of their property during the period the injunction was in place. We disagree.

RCW 7.40.200 provides:

> If an injunction to stay proceedings after verdict or judgment in an action for the recovery of real estate, or the possession thereof, be dissolved, the damages assessed against the party obtaining the injunction, shall include the reasonable rents and profits of the lands recovered, and all waste committed after granting injunction.

"[R]ental value is a well-established measure of damages where a party has been deprived of ownership rights." *Holmquist v. King County*, 192 Wn. App. 551, 563, 368 P.3d 234 (2016). Indeed, our courts have long used rental value as a measure of damages when construction is delayed or unfinished. *Stone v. Hunter Tract Imp. Co.*, 68 Wash. 28, 30, 122 P. 370 (1912); *Panorama Vill. Homeowners Ass'n v. Golden Rule Roofing, Inc.*, 102 Wn. App. 422, 427-28, 10 P.3d 417 (2000). The court properly followed these precedents.

The Liffgens argue that the Dornys never intended to use the property for rental purposes, but that is beside the point. As stated above, the rental value is merely a measure of damages, not a factual basis for awarding them. Likewise, the Liffgens argue that the Dornys did not "properly plead . . . lost rents under RCW 7.40.200." Br. of Appellant at 58. The statute provides for no such pleading being necessary and states that damages "shall include the reasonable rents." RCW 7.40.200. Here, the court relied on Neal's testimony as to the market-value rent of the planned Dorny home and pro-rated that amount for the delay due to the injunction. The Liffgens' arguments fail.

2. *Proximate Cause of Damages*

Next, the Liffgens argue that the trial court erred when it found that the temporary injunction was the proximate cause of the Dorny damages. We disagree.

A claim for wrongful issuance includes an element of proximate cause. *Fisher*, 71 Wn. App. at 476. "Proximate cause means a cause which, in a direct sequence unbroken by any new independent cause, produces the injury complained of, and without which such injury would not have happened." *Fisher*, 71 Wn. App. at 476.

Here substantial evidence supports the trial court's findings that the wrongfully issued injunction proximately caused the Dornys' damages. The construction contractors Cleaver, Kelley, and Fritts all testified that they had to modify their work plans and experienced delays as a result of not being able to use the new driveway during the period of the injunction.

The Liffgens argue that Cleaver could have chosen to clear the land in a different manner, using the existing paved road, which could have removed a delay in clearing the land. Even assuming this is true, Fritts, the construction superintendent, testified that "it was not possible to

begin any construction" without access to the new driveway and that the only way onto the property for his trucks was through the new driveway. 1 VRP at 118. He further testified that he was not released to begin construction until June 2020. This is sufficient evidence to support a finding of proximate cause.

The Liffgens further argue that their injunction did not cause the delays because their expert, Smallwood, testified that there were alternatives the Dornys could have chosen instead of delaying construction. But that is asking us to weigh the evidence of one person's testimony against another's, which we do not do. *Yorkston*, 11 Wn. App. 2d at 831. Moreover, even Smallwood testified that larger trucks would "have difficulty making that 90-degree turn." 2 VRP at 422. We hold that substantial evidence supported the trial courts findings of proximate cause and calculation of damages.

D.      *Attorney Fees Awarded Below*

The Liffgens argue that the trial court erred when it awarded attorney fees in excess of the bond amount and when it awarded fees beyond the date of dissolution of the injunction. Although we disagree and hold that the trial court properly determined the attorney fees may exceed the bond amount, we agree that the trial court erred when it awarded attorney fees up to the date of trial.

We apply a two-part standard of review to a trial court's award of attorney fees: (1) we review de novo if there is a legal basis for awarding attorney fees by statute, under contract, or in equity, and (2) we review the reasonableness of the trial court's award of fees for an abuse of discretion. *Falcon Props, LLC v. Bowfits 1308 LLC*, 16 Wn. App. 2d 1, 11, 478 P.3d 134 (2020). A trial court abuses its discretion when its decision is manifestly unreasonable, based on

untenable grounds, or contrary to law. *Hall v. Feigenbaum*, 178 Wn. App. 811, 827, 319 P.3d 61 (2014); *TJ Landco, LLC v. Harley C. Douglass, Inc.*, 186 Wn. App. 249, 260, 346 P.3d 777 (2015).

Here, the first prong is satisfied because the basis for awarding attorney fees is in equity. "On equitable grounds, a party may recover attorneys' fees reasonably incurred in dissolving a wrongfully issued injunction or restraining order." *Ino Ino, Inc.*, 132 Wn.2d at 143; *see also Alderwood Assocs. v. Wash. Envtl. Council*, 96 Wn.2d 230, 247, 635 P.2d 108 (1981); *Cecil v. Dominy*, 69 Wn.2d 289, 291-92, 418 P.2d 233 (1966). "A court, in exercising its discretion, may award attorney fees when a party prevails in dissolving an injunction." *Doyle v. Lee*, 166 Wn. App. 397, 407, 272 P.3d 256 (2012). Thus, we must analyze the award of fees for an abuse of discretion.

### 1. *Attorney Fees Beyond Value of Bond*

The Liffgens argue that the trial court erred when it awarded attorney fees beyond the value of the bond. We disagree.

In *Ino Ino, Inc. v. Bellevue*, 132 Wn.2d at 143, our Supreme Court plainly stated that in recovering for a wrongfully issued injunction, "The award for attorneys' fees may exceed the amount of the bond required by Civil Rule 65(c) because the award is based on equity rather than the bond statute." Although this was a plurality opinion by four justices, two other justices concurred with this holding. "The majority is correct in concluding that the fees are not limited to the amount of the bond required by CR 65(c)." *Ino Ino, Inc.*, 132 Wn.2d at 148 (Talmadge, J. concurring in part/dissenting in part; joined by Durham, C.J.). Although *Ino Ino* was a First Amendment case regarding speech, a temporary injunction was issued, and the issues of

wrongful injunction and attorney fees were decided squarely on equitable grounds. 132 Wn.2d at 111, 142-44.

Here, the trial court awarded attorney fees as an equitable recovery. The court was not required to limit attorney fees to the amount of the bond.

The Liffgens cite *Cornell Pump Co. v. City of Bellingham*, 123 Wn. App. 226, 236, 98 P.3d 84 (2004), to argue that the trial court abused its discretion when it did not consider whether it was reasonable for the Liffgens to seek injunctive relief. But the *Cornell Pump* court cabined its holding requiring a court determine the reasonableness of seeking injunctive relief to the "narrow circumstances of [that] case" and "in the public bidding context." 123 Wn. App. at 236. Thus, *Cornell Pump Co.* is inapposite. Accordingly, we hold that the trial court did not abuse its discretion when it awarded attorney fees in excess of the bond amount.

2. *"Sole Issue Presented in this Case" and Attorney Fees Beyond Date of Dissolution of Injunction*

The Liffgens argue that the trial court erred when it found that injunctive relief was the sole issue presented in the Liffgens' lawsuit. The Liffgens assign error to this finding of fact. This finding is important because our Supreme Court has held that attorney fees are recoverable through trial only where injunctive relief is the sole purpose of the suit, *Cecil*, 69 Wn.2d at 293-94, and the Liffgens argue that the trial court erred when it awarded the Dornys attorney fees through the trial, and not just to the date the court dissolved the injunction. We agree.

If injunctive relief is the sole purpose of the suit, and the trial court dissolves a wrongfully issued temporary injunction, then the prevailing may recover attorney fees as damages. *Cecil*, 69 Wn.2d at 293. "But, where injunctive relief is not the sole purpose of the

suit and only incidental or ancillary thereto, counsel fees as damages are recoverable only for services reasonably performed in attempting to quash the temporary injunction and not for professional services rendered in the trial on the merits." *Cecil*, 69 Wn.2d at 293-94.

Our courts have long held that a defendant may recover attorneys' fees only up to the date on which a wrongfully issued restraining order is dissolved. *Ino Ino, Inc.*, 132 Wn.2d at 144; *see also Ritchie v. Markley*, 23 Wn. App. 569, 575, 597 P.2d 449 (1979), *overruled on other grounds in Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 823, 828 P.2d 549 (1992); *Talbot v. Gray*, 11 Wn. App. 807, 812, 525 P.2d 801 (1974); *Berne v. Maxham*, 82 Wash. 235, 237, 144 P. 23 (1914). The equitable rule allowing attorney fees for dissolving a temporary restraining order does not entitle a prevailing defendant to recover *all* fees because the purpose of the rule is to deter plaintiffs from seeking relief before a trial on the merits. *Ino Ino, Inc.*, 132 Wn.2d at 143-44; *Ritchie*, 23 Wn. App. at 575.

Here, the Liffgens' complaint included claims for declaratory judgment and a permanent injunction, and their amended complaint added a claim for trespass to easement.[7] But the trial court found that the injunction was the sole issue presented in the case. The court then awarded the Dornys attorney fees through the date of trial, not just to the date it dissolved the injunction. Accordingly, we hold that the trial court erred when it found that the injunction was the sole issue before the court and awarded attorney fees past the date of the summary judgment when it dissolved the injunction.

---

[7] The trial court acknowledged as much in finding number 11: "Plaintiffs filed a Summons and Complaint seeking a declaratory judgment and an injunction barring Defendants from using the Access Road for access to Defendants' Property." CP at 434.

ATTORNEY FEES ON APPEAL

The Dornys argue that we should award them attorney fees on appeal. We disagree.

The plurality in *Ino Ino* also analyzed whether a party that was wrongfully enjoined may seek attorney fees on appeal. 132 Wn.2d at 144. As explained above, the court there noted that "the equitable rule allowing attorneys' fees for dissolving a temporary restraining order does not entitle a successful defendant to recover all fees incurred in defending against injunctive relief." *Ino Ino, Inc.*, 132 Wn.2d at 144. The court laid out the rule from a long line of cases that attorney fees incurred at the appellate level may be recovered only when the appeal was necessary to dissolve a currently effective restraining order. *Ino Ino, Inc.*, 132 Wn.2d at 144. *See Alderwood Assocs.*, 96 Wn.2d at 247 (allowing fees on appeal because the wrongfully issued temporary restraining order had not been dissolved previously by trial, motion, or hearing); *Seattle Firefighters Union Local No. 27 v. Hollister*, 48 Wn. App. 129, 138, 737 P.2d 1302 (1987) (allowing fees on appeal because the defendant incurred the fees to dissolve temporary injunctions that were still effective prior to appeal); *Federal Way Family Physicians, Inc. v. Tacoma Stands Up For Life*, 106 Wn.2d 261, 268-69, 721 P.2d 946 (1986) (allowing fees incurred on appeal to dissolve a temporary restraining order that was still effective prior to appeal, conditioned on the trial court's decision to deny a permanent injunction after a hearing on the merits).

Here, the trial court dissolved the temporary injunction at summary judgment. It was not in effect at the time of this appeal. Accordingly, we do not award the Dornys fees on appeal.

CONCLUSION

We hold that the trial court did not err when it granted the Dornys' motion for partial summary judgment. We hold that the language of the easement was not ambiguous, that the Dornys' use of the easement was within the scope of that plain language, and that the Liffgens raised no genuine issue of material fact. We further hold that the trial court did not err when it ruled that the preliminary injunction was wrongfully issued, and that the court's damage calculations were supported by substantial evidence. Finally, we hold that the trial court acted within its discretion when it awarded attorney fees in excess of the $20,000 bond, but hold that the trial court erred when it awarded the Dornys attorney fees through the date of trial. Accordingly, we affirm in part, reverse in part, and remand to the trial court to calculate appropriate attorney fees.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Worswick, J.

We concur:

_____
Lee, J.

_____
Veljacic, J.